# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

PAUL E. SPINNER,

       Plaintiff,

v.                                     Civil Action 2:20-cv-4676
                                        Judge Michael H. Watson
                                        Magistrate Judge Jolson

COMMISIONER OF
SOCIAL SECURITY,

       Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Paul E. Spinner, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff protectively filed his application for SSI on December 29, 2016, alleging disability that same day. (Doc. 12, Tr. 215–23). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on November 20, 2019. (Tr. 40–65). On December 16, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 16–39). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5–10).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on September 9, 2020 (Doc. 1), and the Commissioner filed the administrative record on February 2,

2021 (Doc. 12). Plaintiff filed his Statement of Errors on March 19, 2021, and this matter is now ripe for review. (*See* Docs. 13, 14, 15).

### A. Relevant Medical History and Hearing Testimony

At the time of the ALJ's decision, Plaintiff was forty-years-old. (Tr. 21). Plaintiff alleges a variety of ongoing residual effects from treatment for a brain tumor, now in remission, which was discovered after he experienced seizures in 2014. (Tr. 22). Plaintiff underwent a biopsy in 2014 and recovered well. (*Id.*). Upon completing radiation and maintenance chemotherapy, however, Plaintiff complained of numerous physical and mental issues. (*Id.*). Because Plaintiff's statement of errors pertains to his mental impairments only, the Undersigned will limit her discussion of the medical record and the hearing testimony to the same.

*1. Medical History*

The ALJ usefully summarized the record pertaining to Plaintiff's psychological functioning. She began by summarizing Plaintiff's January 2017 psychological evaluation:

> The greater issue in this case seems to be [Plaintiff]'s level of psychological functioning given his allegations of memory loss (Exhibit 3F at 7) as well as concentration deficits (testimony) which were medically investigated by neuropsychological evaluation in January 2017 (Exhibit 8F). [Plaintiff] reported fluctuating issues with forgetfulness of appointments, difficulty sustaining attention, and a tendency to repeat conversations, all of which started shortly after chemotherapy treatment. He also reported depressive and anxiety symptoms, such as increased apathy and worry, which also started shortly after he began chemotherapy treatment. Physically, [Plaintiff] complained of mild hand weakness with occasional numbness, chronic joint pain, loss of sleep, and a history of seizures totaling 3 over his lifetime. Yet, [Plaintiff] denied difficulties with any basic activities of daily living, e.g. managing finances or completing chores. He was able to manage his medications independently even using an alarm as a reminder and drove short distances. At the time of the evaluation, the [Plaintiff] resided with his girlfriend, his one-year-old child, his girlfriend's child, and his girlfriend's friend. He smoked marijuana daily.
>
> [Plaintiff] presented 2 hours late for his initial assessment due to reportedly forgetting his appointment. He smelled like marijuana but was alert and fully-oriented. There was no evidence of word-finding difficulties, circumlocution or

paraphasia errors. Thought process and content appeared linear and logical. Overall intellectual functioning fell in the average range.

Performances across measures of attention and working memory were consistent with expectations. Processing speed ranged from low average to very superior. Short – and long-delay free recalls fell well below expectations but [Plaintiff] significantly benefited from cues. During recognition, [Plaintiff] demonstrated borderline impaired discriminability with 15/16 true positives and 12 false positives. But, his performance on another verbal memory task revealed average immediate recall and borderline delayed recall with intact recognition. [Plaintiff] demonstrated average total learning across 3 trials with low average delayed recall and intact discriminability. His performance on a second visual memory measure revealed impaired immediate recall and borderline delayed recall with intact recognition. Performance on an abstract problem-solving task revealed a significant number of failures to maintain set; otherwise, performance across measures of executive functions were generally consistent with expectation. Objective measures of personality and psychological functioning indicated [Plaintiff] was experiencing "significant" psychological dysfunction, somatic symptoms, and cognitive problems. Pharmacological management and psychotherapy were recommended. It was also recommended that [Plaintiff] increase his organization and discontinue, or at least, reduce, his use of marijuana.

(Tr. 22–23).

The ALJ then summarized Plaintiff's April 2017 exam with Dr. T. Rodney Swearingen:

In order to clarify the nature and severity of any existing mental impairment, [Plaintiff] was referred for a psychological examination by the Division of Disability Determination (DDD) (Exhibit 4F). The examination was conducted by T. Rodney Swearingen, Ph.D. on April 26, 2017. [Plaintiff]'s chief complaints were brain cancer in remission, seizures, and back and knee pain treated by medication. He also reported a substance abuse history – he had smoked marijuana daily for the last 20 years for physical and mental health reasons and continued to use marijuana daily at the time of the examination. He also took psychotropic medication for symptoms including crying spells, sleeping difficulties, traumatic memories, and mood swings but had never been involved in counseling or psychiatrically hospitalized.

At the time of the examination, [Plaintiff] resided with his father in a house. He was widowed and had 2 minor children. [Plaintiff] alleged he was unable to live independently or seek appropriate community resources but reported performing many daily living activities including taking his nephew to school, spending time with his infant son, cleaning, and doing laundry. He socialized daily with his family, played pool, and watched movies. He prepared meals and shopped with his father or other family members.

> [Plaintiff] presented with appropriate hygiene and grooming. Affect was flat and mood was guarded but [Plaintiff] was cooperative. Eye contact was good. Facial and gestural expressions were normal. He exhibited no psychomotor retardation or agitation and fine and gross motor skills appeared unimpaired. There was no evidence of thought content abnormalities. Thought processes were well-organized. Speech was 100% understandable. [Plaintiff] was alert and fully oriented.
>
> In connection with his examination, Dr. Swearingen also administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV). Testing revealed the following scores: verbal comprehension = 76; perceptual reasoning = 119; working memory = 83; processing speed = 108; full-scale IQ (FSIQ) = 96.
>
> [Plaintiff] also was administered the Wechsler Memory Scale-Fourth Edition (WMS-IV) which measures an individual's different memory functions. Testing revealed the following scores: auditory memory = 81; visual memory = 71; visual working memory = 106; immediate memory = 84; delayed memory = 61.
>
> Based upon the consultative examination and psychometric testing, Dr. Swearingen diagnosed major vascular neurocognitive disorder with behavioral disturbances, PTSD, and "severe" cannabis use disorder. He concluded [Plaintiff] is unable to manage his own funds and has "impaired" functioning in all areas of mental abilities.

(Tr. 23–24).

Next, the ALJ summarized the state agency psychologists' review of Plaintiff's mental health records:

> Psychologist Stanley Kravitz, Ph.D., evaluated [Plaintiff]'s mental condition based on the evidence of record without examining [Plaintiff] on behalf of the DDD on May 24, 2017 (Exhibit 1A). In the opinion of Dr. Kravitz, [Plaintiff] has "severe" mental impairments of neurocognitive disorder, drug addiction disorder, and anxiety and obsessive-compulsive disorders. Dr. Kravitz concluded that [Plaintiff] experiences a moderate limitation in his ability to understand, remember, or apply information. He experiences only a moderate limitation in his ability to interact with others. [Plaintiff] has a moderate limitation in his ability to concentrate, persist, or maintain pace and a moderate limitation in his ability to adapt or manage oneself. [Plaintiff] retains the capacity to perform simple, routine 1-3 step tasks with more frequent breaks/length of breaks and occasional supervision as time on tasks increases and during transitions. [Plaintiff] can perform these tasks in a separate work area or in a small group of 3-4 with occasional routine contact with coworkers and superficial interaction with the public and supervisors. He can adapt to a setting in which duties are relatively static (Exhibit 1A at 13–16).

> DDD psychologist Mary Hill, Ph.D., evaluated [Plaintiff]'s mental condition based on the evidence of record without examining [Plaintiff] on October 20, 2017 (Exhibit 3A). In the opinion of Dr. Hill, [Plaintiff] has "severe" mental impairments of neurocognitive disorder, drug addiction disorder, and anxiety and obsessive-compulsive disorders. Dr. Hill concluded that [Plaintiff] experiences a moderate limitation in his ability to understand, remember, or apply information. He experiences only a moderate limitation in his ability to interact with others. [Plaintiff] has a moderate limitation in his ability to concentrate, persist, or maintain pace and a moderate limitation in his ability to adapt or manage oneself. [Plaintiff] retains the capacity to perform 1-3 step tasks with no more than moderate pace or production quotas and extra time and repetition for new learning. He is able to interact with others on a superficial basis. He can adapt to a setting in which duties are relatively static (Exhibit 3A at 12–14).

(Tr. 24–25).

*2. Relevant Hearing Testimony*

The ALJ also summarized the relevant testimony from Plaintiff's hearing:

> [Plaintiff] testified he is widowed and has a 4-year-old child with whom he has visitation. [Plaintiff] resides with his friend, nephew, and grandson. He takes multiple medications daily for brain cancer, headaches, diffuse body pain, nausea and seizures and smokes marijuana daily to relieve sleeping difficulties and loss of appetite. [Plaintiff]'s conditions cause such memory loss and concentration deficits that he cannot even perform a less physically demanding job, no longer reads, needs appointment reminders and instructions repeated, and rarely visits his son who lived with him last year. He no longer has an active driver's license after a seizure caused a motor vehicle accident and being pulled over when driving without a license.
>
> In a typical day, [Plaintiff] does little more than watch television though he is unable to remember the content of a 30[-]minute program 5–10 minutes after watching it. When visiting with his son, who likes to play with his computer, video games, and cell phone, [Plaintiff] takes him to the park for short periods.

(Tr. 21).

**B. The ALJ's Decision**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 29, 2016, the application date. (Tr. 21). The ALJ determined that Plaintiff suffered from the following severe impairments: history of grade II astrocytoma of the brain, history of seizure disorder, obesity, depressive disorder, major vascular neurocognitive disorder with behavioral

5

disturbance, posttraumatic stress disorder (PTSD), and cannabis use disorder. (Tr. 22). Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 27). More specifically, the ALJ considered whether Plaintiff's impairments met Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders) and 12.15 (trauma-and stressor-related disorders). (Tr. 28). She also discussed each of the paragraph B criteria, determining that Plaintiff was moderately limited in understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. (Tr. 25–26, 28). The ALJ then considered whether the paragraph C criteria were met and determined that they were not. (Tr. 28).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) subject to the following limitations: (1) occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; (2) frequently balancing; (3) never climbing ladders, ropes, or scaffolds; (4) no exposure to unprotected heights or moving mechanical parts; (5) no driving as part of job duties; (6) performing simple, routine, and repetitive tasks defined as work that can be learned in 30 days or less; (7) unable to perform production-rate pace work (e.g. assembly line work) but can perform goal-oriented work (e.g. office cleaner); (8) occasional contact with coworkers, supervisor, and the general public; and (9) occasional changes in an otherwise routine work setting with those changes being explained in advance.

(Tr. 29).

As for the relevant opinion evidence, the ALJ gave little weight to the opinion of Dr. Swearingen, finding it vague and inconsistent with the record and his own exam findings. (Tr. 24). The ALJ assigned partial weight to the opinions of the state agency psychologists, explaining that any of their expressed conclusions as to Plaintiff's mental capabilities were unsupported by the balance of the record, while others were vocationally vague and undefined, such as allowing him more frequent breaks/length of breaks and limiting him to "moderate" pace or production quotas.

6

(Tr. 25).

Relying on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a furniture mover, but could perform jobs that exist in significant numbers in the national economy, such as a warehouse checker, marker, or office mail clerk. (Tr. 33–34). She thus concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since December 29, 2016, the date the application was filed (20 CFR 416.920(g))." (Tr. 35).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises only one statement of error: that the ALJ erred in evaluating several mental health opinions, resulting in an inadequate RFC. (*See generally* Doc. 13 at 7–12). Three areas of functioning are at issue: Plaintiff's ability to interact with others in the workplace; Plaintiff's need for additional breaks throughout the workday; and Plaintiff's need for supervision.

7

## A. Workplace Interactions

Dr. Swearingen and the state agency psychologists opined that Plaintiff would have some difficulty interacting with others in the workplace. Specifically, Dr. Swearingen, who examined Plaintiff per the agency's request, opined that Plaintiff was "impaired in his ability to maintain effective social interactions on a consistent and independent basis with supervisors, coworkers, and the public." (Tr. 394). Yet, as the ALJ notes, "[w]hen examined by Dr. Swearingen, [Plaintiff] reported no difficulties interacting with others excerpt for an isolated incident with a supervisor." (Tr. 24). Accordingly, the ALJ afforded "little weight" to Dr. Swearingen's opinion, noting, "[a]ppropriate restrictions have been included to accommodate the claimant's psychological limitations, but lacking corroborating support elsewhere in the medical record, many of the vague conclusions offered by Dr. Swearingen could only be attributed to uncritical acceptance of the claimant's subjective complaints." (*Id.*).

Both state agency psychologists also opined on Plaintiff's social functioning. At the initial level, Dr. Stanley Kravitz noted:

> Sometimes suspicious of other people. Denied problems getting along with coworkers. He has had a problems [sic] with a supervisor. MH [mental health] symptoms, some memory deficits and daily marijuana use likely to impair. [Plaintiff] retains the ability to interact with others, but on an occasional routine and more superficial basis with the general public and supervisors, and on a routine basis with coworkers. [Plaintiff] requires a separate work area or possibly a small group of 3–4 with occasional routine and more superficial interaction with the public and supervisors, and routine contacts with coworkers.

(Tr. 80). Notably, though, Dr. Kravitz also opined that Plaintiff could get along with coworkers or peers without distracting them or exhibiting behavioral extremes and maintain socially appropriate behavior. (*Id.*). At the reconsideration level, state agency psychologist, Dr. Mary Hill, opined, among other things, that Plaintiff "retains the ability to interact with others on a superficial basis." (Tr. 97).

8

The ALJ afforded these opinions, "partial weight," explaining:

> . . . Other suggested restrictions, such as performing tasks in a separate work area and in small groups, are not supported by the balance of the record. When examined by Dr. Swearingen, the claimant reported no difficulties interacting with others except for an isolated incident with a supervisor. He regularly socializes with family and resides with a friend so he clearly is able to interact appropriately with those who are known to him. Thus, imposing such restrictions seems to be based upon convenience or preference instead of psychological necessity.

(Tr. 25).

While declining to adopt these opinions in full, the ALJ agreed that the record supported Plaintiff's social challenges. (*See* Tr. 26). So she limited Plaintiff to "occasional" contact with coworkers, supervisors, and the general public. (Tr. 29). The ALJ explained her basis for this limitation, and substantial evidence supports her decision.

To begin, the ALJ considered Plaintiff's history of social interactions, starting with his educational history. (*See* Tr. 26 (noting that Plaintiff's "educational history included a few fights while in school" but that Plaintiff "also reported getting along with other students and teachers")). The ALJ then considered Plaintiff's history of workplace interactions. She explained that, at his examination with Dr. Swearingen, Plaintiff "denied having problems with coworkers or supervisors beyond a lone incident with a supervisor who wanted him to work alone." (*Id.*). Additionally, the ALJ noted that Plaintiff "maintains visitation with his son and regularly socializes with his family [ ] showing the ability to interact appropriately to those known to him." (*Id.*).

Still, considering the fact that Plaintiff has been arrested and reported difficulty trusting others, the ALJ "[g]rant[ed] [Plaintiff] the maximum benefit with regard to symptoms that might cause him to display emotional distress in a workplace setting with respect to relating adequately to other persons" and "found that [Plaintiff] could possibly experience a moderate limitation in his ability to interact with others." (*Id.*).

Plaintiff asserts that this fashioned RFC does not fully accommodate his social difficulties. For support, he emphasizes that the state agency psychologists opined that Plaintiff could tolerate only "superficial" workplace interactions, whereas the RFC refers to only "occasional" workplace interactions. (*See generally* Doc. 13 at 9–11). For support, Plaintiff cites caselaw distinguishing the two terms. (*See id.* at 9–10 (citing cases explaining that "occasional" is a quantitative term, while "superficial" is qualitative)). While the Court agrees that "occasional" and "superficial" have distinct meanings, these cases do not help Plaintiff. For example, in *Corey v. Commissioner of Social Security* and *Lindsey v. Commissioner of Social Security*, the ALJ afforded significant weight to the opinions limiting the plaintiff to both occasional and superficial interactions but, without any explanation, omitted "superficial" and included only "occasional" in the RFC. *See Corey*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio, July 17, 2019); *Lindsey*, No. 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018). So the reviewing courts were left wondering why the ALJ—despite seemingly adopting the opinion in whole—included the quantitative social limitation but omitted the qualitative limitation. *See, e.g.*, *Corey*, 2019 WL 3226945, at *4 (remanding the ALJ's decision because "where, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so[,]" otherwise, the court is unable to "conduct[] meaningful review to determine whether substantial evidence supports his decision").

That is not what happened here. As explained, the ALJ discounted both Dr. Swearingen's and the state agency psychologists' opinions regarding Plaintiff's social functioning. And she went on to explain in detail why Plaintiff is no more than moderately limited in his ability to interact with others. And she gave Plaintiff's subjective reports the benefit of the doubt and limited Plaintiff to only occasional workplace interactions. Thus, unlike the cases Plaintiff cites, the Court can easily

trace the ALJ's reasoning. *See, e.g.*, *Collins v. Comm'r of Soc. Sec.*, No. 3:17 CV 2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018), *report and recommendation adopted*, No. 3:17-CV-2059, 2019 WL 1409535 (N.D. Ohio Mar. 28, 2019) (affirming ALJ's decision limiting plaintiff to occasional, rather than superficial, workplace interactions where "the ALJ reviewed [p]laintiff's social interaction abilities, and provided substantial evidence for her ultimate decision," including that plaintiff had "moderate difficulties" but "interacted with friends and attended fishing tournaments").

At base, "[a]ll that was required was for the ALJ to 'say enough to allow the appellate court to trace the path of his reasoning.'" *Green v. Comm'r of Soc. Sec.*, No. 2:20-CV-232, 2020 WL 4877187, at *6 (S.D. Ohio Aug. 20, 2020), *report and recommendation adopted sub nom. Green v. Comm'r of Soc. Sec.*, No. 2:20-CV-232, 2020 WL 7395330 (S.D. Ohio Dec. 17, 2020) (quoting *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011)). The ALJ more than satisfied that standard here.

### B. Breaks and Supervision

Next, Plaintiff asserts that the ALJ erred by omitting certain limitations set forth by state agency psychologist Dr. Kravitz at the initial level. (Doc. 13 at 11). Dr. Kravitz opined that Plaintiff "retains the capacity to perform simple, routine 1–3 step tasks where there are no strict production demands" and "requires support/explanation to carry out more detailed instruction," in addition to "more frequent breaks/length of breaks as time on task increases/during transitions (shift change or any other breaks), but able to complete normal workday/workweek w/ explanation/support" and "requires occasional supervision to maintain quality/productivity." (Tr. 80).

The ALJ discounted Dr. Kravitz's opinion as "vocationally vague and undefined." (Tr. 25). Despite Plaintiff's protests otherwise, it was proper for her to do so. *See Ackles v. Comm'r of Soc. Sec.*, 470 F. Supp. 3d 744, 747 (N.D. Ohio 2020) (collecting cases and noting that "[t]he vagueness of a medical opinion is a proper basis on which to afford it less weight"); *see also Chiccola v. Comm'r of Soc. Sec.*, No. 1:18 CV 2940, 2020 WL 1031488, at *8 (N.D. Ohio Mar. 3, 2020) (internal citations omitted) (upholding ALJ's decision discounting, as vague, doctor's opinion that "[w]hen symptoms increase, she will occasionally need flexibility in work schedule, taking breaks and pacing," noting that, "[w]hile these statements certainly suggest some limitation, the ALJ's determination they were too vague to translate into work-related restrictions is appropriate"). Thus, Plaintiff's contention that the ALJ improperly dismissed the opinion as vague is without merit.

Perhaps more importantly, the ALJ was not required to incorporate Dr. Kravitz's vague limitations regarding breaks and supervision that, notably, were not adopted by Dr. Hill at the reconsideration level or proposed by Dr. Swearingen. Rather, the ALJ, as required, "formulat[ed] the RFC based on all the evidence of record." *Ferrell v. Comm'r of Soc. Sec.*, No. 1:19 CV 2289, 2020 WL 6505055, at *9–10 (N.D. Ohio Nov. 5, 2020) (noting that the ALJ's RFC "need not identically match any particular medical opinion"). Specifically, in fashioning Plaintiff's RFC, the ALJ considered the record evidence and adopted the state agency psychologists' and Dr. Swearingen's more concrete and record-based limitations. For instance, in considering Plaintiff's ability to understand; remember; or apply information, the ALJ explained:

> [Plaintiff] alleges problems with oral and written instructions secondary to chemotherapy and needs things repeated and written down. On neuropsychological evaluation, he demonstrated average total learning with low average delayed recall and intact discriminability. His performance on a second visual memory measure revealed impaired immediate recall and borderline delayed recall with intact recognition. But, thought process and content appeared linear and logical. There was no evidence of word-finding difficulties, circumlocution or paraphasia errors. Intellectual functioning fell in the average range. Treatment records document intact

> long and short-term memory and normal fund of knowledge (*e.g.*, Exhibits 3F at 7/6F at 5, 13, 24). [Plaintiff] is a high school graduate and "did well" in school even taking extra classes in a regular curriculum to graduate early. (Exhibit 4F). He was able to follow directions when examined by Dr. Swearingen who concluded his reading, writing, and comprehension abilities are "good" so that [Plaintiff] is able to understand and carry out one-step instructions. Similarly, both DDD reviewing psychologists found that [Plaintiff] is moderately limited in his ability to understand and remember detailed instructions (Exhibits 1A at 14/3A at 12), but retains the ability to perform simple 1–3 step tasks.

(Tr. 25). Based upon this evidence, "even in giving full consideration to [Plaintiff]'s subjective complaints of his problems with oral and written instructions (Exhibit 4F at 2), the [ALJ] f[ound] that [Plaintiff] experiences no more than a moderate limitation in this area." (*Id*.). So the ALJ limited Plaintiff to "simple, routine, and repetitive tasks defined as work that can be learned in 30 days or less." (Tr. 29).

Similarly, in considering Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ noted:

> When consultatively examined by Dr. Swearingen, [Plaintiff] presented as alert and fully-oriented. Concentration and persistence on task were good; pace of task was average. There were no overt indications of delusional beliefs or behavioral manifestations of hallucinations (Exhibit 4F). Likewise, upon neuropsychological evaluation [Plaintiff] was alert and fully-oriented. Processing speed ranged from low average to very superior. Motorically, speeded motor dexterity was consistent with expectations and did not reveal any lateralizing impairments (Exhibit 18F at 17). His level of intellectual functioning is estimated as average. . . . The DDD reviewing psychologists found [Plaintiff] is capable of simple routine 1–3 step tasks.

(Tr. 26). The ALJ concluded that, "in view of the claimant's use of psychotropic medication as well as subjective complaints of 'somatic symptoms' (Exhibit 8F at 17), it appears reasonable to find that he might possibly experience some degree of difficulty sustaining concentration (particularly in stressful situations)" and concluded that Plaintiff has a "moderate" limitation in this regard. (*Id*.). Thus, the ALJ precluded Plaintiff from performing production-rate pace work but concluded that he could perform goal-oriented work. (Tr. 29). On top of that, the ALJ restricted

13

Plaintiff to "occasional changes in an otherwise routine work setting with those changes being explained in advance." (*Id.*).

As explained, "[t]he ALJ is tasked with making an RFC determination, considering the medical opinions and all other evidence of record." *Beard v. Comm'r of Soc. Sec.*, No. 1:16-CV-1091, 2018 WL 526555, at *10 (S.D. Ohio Jan. 23, 2018), *report and recommendation adopted*, No. 1:16CV1091, 2018 WL 1149864 (S.D. Ohio Mar. 5, 2018) (citations omitted) (holding that the plaintiff failed to show that the ALJ erred by not adopting all of the medical opinions of the state agency psychologists, whose opinions the ALJ afforded only "some" weight). That is what the ALJ did here, and Plaintiff has shown no reversible error.

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation

de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date:  May 26, 2021                                                    /s/ Kimberly A. Jolson
                                                                                KIMBERLY A. JOLSON
                                                                                UNITED STATES MAGISTRATE JUDGE